# FLORIDA SMOKED FISH COMPANY
# LIFE INSURANCE PLAN

THIS LIFE INSURANCE PLAN (the "Plan"), made and entered into this \\ day of November, 1995, by and between FLORIDA SMOKED FISH COMPANY, a corporation duly organized and existing under the laws of the State of Florida (hereinafter referred to as the "Company") and the employee designated in the Adoption Agreement attached hereto and made a part hereof (hereinafter referred to as the "Employee").

## W I T N E S S E T H   T H A T:

WHEREAS, the Employee is presently employed by the Company and his services have contributed to the successful operation of the Company and the Company believes it is in the best interest of the Company to retain the services of the Employee; and

WHEREAS, the Company is desirous of assisting in paying for life insurance on the Employee's life; and

WHEREAS, the Company has applied for a life insurance policy (hereinafter referred to as the "Policy") issued by the insurer designated in the Adoption Agreement (hereinafter referred to as the "Insurer") in the initial face amount specified in the Adoption Agreement (such face amount of coverage, as modified from time to time by the Company pursuant to this Plan is hereinafter referred to as the "Coverage") on the Employee's life; and

WHEREAS, the Company and the Employee agree to make the Policy subject to this Plan.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, receipt of which is hereby acknowledged, the Company and the Employee hereby mutually covenant and agree as follows:

## ARTICLE I

## PAYMENT OF PREMIUMS

1.1    Company Payments. The Company shall pay all premiums required under the Policy and shall be entitled, but not required, to make additional deposits into the Policy as permitted under the terms of the Policy.

GTIR\ESTEVES\VL337410.1;10/11/95

**Exhibit "A"**

GT06/22/07SI1-0014

## ARTICLE II

## POLICY OWNERSHIP

2.1    Ownership.  The Company shall be the owner of the Policy and shall be entitled to exercise all rights of an owner under the Policy, including without limitation, the right to make loans under and withdrawals from the Policy, determine the manner in which the cash value of the Policy is to be invested among the investment alternatives within the Policy, surrender the Policy, and, subject to Section 3.1 hereof, determine the beneficiaries of any death benefit payable under the Policy and the settlement options for payment of such death benefits.

2.2    Assignment Rights.  The Company shall have the right to assign any part or all of its interest in the Policy (subject to the terms and conditions of this Plan) to any person, entity or trust.

## ARTICLE III

## EMPLOYEE'S RIGHT TO DESIGNATE BENEFICIARY

3.1    Employee's Right to Designate Beneficiary.  The Employee shall have the right to direct the Company as to the designation of the beneficiary of that portion of the death benefit payable under the Policy that exceeds the cash value of the Policy.  The Company, upon receipt of any such designation or change in designation from the Employee, shall promptly take such action as is necessary to effect the Employee's desired designation or change of beneficiary in accordance therewith and any such change or designation will become effective as provided in the Policy.

## ARTICLE IV

## TERMINATION OF PLAN

4.1    Termination Events.  This Plan shall automatically terminate with respect to an Employee upon the earliest of the following events:

a.    Termination of employment of the Employee with the Company prior to the Employee's death,

b.    Bankruptcy, receivership or dissolution of the Company,

c.    Termination of this Plan by the Company,

GTH\ESTEVISV\337410.1120/11/95

2

d.  The written notice by the Company to the Employee of the Company's intention to terminate the Employee's Adoption Agreements, and

e.  The death of the Employee.

4.2  <u>Disposition of Policy</u>.  In the event of a termination under Section 4.1 a, b, c or d of this Plan, the Employee shall be entitled to request within thirty (30) days after such termination, that the Company assign the Policy to the Employee.  In the event that the Employee exercises this right, the Company shall withdraw from the Policy an amount equal to the excess, if any, of the cash surrender value of the Policy over the sum of (i) any then outstanding unpaid principal and interest on any loans by the Company against the Policy, and (ii) $100, and the Company shall transfer title to the Policy to the Employee, free of all provisions and restrictions of this Plan.  In the event the Employee does not exercise his right to purchase the Policy, then thereafter, the Company shall own the Policy, free of all provisions and restrictions of this Plan.

4.3  <u>Allocation of Death Benefit</u>.  In the event of a termination under Section 4.1(e) of this Plan, the death benefit under the Policy shall be divided as follows:

a.  The Company shall receive an amount equal to the cash value of the Policy, determined as of the date of the Employee's death, and

b.  The beneficiary or beneficiaries designated by the Employee pursuant to Section 3.1 of this Plan shall receive the balance of said death benefit.

4.4  <u>Company Undertakings</u>.  Upon the death of the Employee while the Plan is in force, the Company agrees to take such action as may be necessary to obtain payment from the Insurer of the death benefit to the beneficiaries, including, but not limited to, providing the Insurer with an affidavit as to the amount to which the Company is entitled under this Plan.

**ARTICLE V**

**GOVERNING LAWS & NOTICES**

5.1  <u>Governing Law</u>.  This Plan shall be governed by and construed in accordance with the laws of Florida where it is made and to be performed.

5.2  <u>Notices</u>.  All notices hereunder shall be in writing and sent by first class mail with postage prepaid to each party at the address specified below:

GT06/22/07SI1-0016

a.  If to the Company, addressed to:

> Florida Smoked Fish Company
> 1111 N.W. 159th Drive
> Miami, Florida 33169
> Attention: Mr. Harvey Oxenberg

b.  If to the Employee, addressed to the Employee at the address specified on Exhibit A to the Adoption Agreement.

Any party may change the address for such party herein set forth by giving notice of such change to the other parties pursuant to this Section.

## ARTICLE VI

## NOT A CONTRACT OF EMPLOYMENT

6.1   General.   This Plan shall not be deemed to constitute a contract of employment between the Employee and the Company, nor shall any provision restrict the right of the Company to discharge the Employee or restrict the right of the Employee to terminate employment.

## ARTICLE VII

## AMENDMENT & SUCCESSORS

7.1   General. No beneficiary under the Policy shall obtain any vested right to have this Plan continued in full. This Plan sets forth the entire understanding of the parties and may only be amended or modified, in whole or in part, at any time by the Employee and the Company in writing.  This Plan will bind and benefit the parties and their legal representatives and successors and assigns.

## ARTICLE VIII

## ADMINISTRATION

8.1   Administrative Committee.  The Company shall appoint a Committee for the administration of the Plan consisting of one or more persons.   Any Committee member may, but need not, be an officer or employee of the Company and each shall serve until his successor shall be appointed in like manner. Any member of the Committee may resign by

GIFS\LESTEY\SY\337410.1\10/11/95

GT06/22/07SI1-0017

delivering his written resignation to the Company. The Company may remove any member of the Committee at any time.

8.2 _Powers and Duties_. The Committee generally shall be responsible for the management, operation, interpretation and administration of the Plan. The Committee shall:

a. Establish procedures for allocation of responsibilities of the Plan which are not allocated herein;

b. Determine the names of those Employees who are eligible to participate and such other matters as may be necessary to enable payment under the Plan;

c. Construe all terms, provisions, conditions and limitations of the Plan;

d. Correct any defect, supply any omission or reconcile any inconsistency that may appear in the Plan;

e. Determine the amount, manner and time of payment of any benefits hereunder and prescribe procedures to be followed by Employees to obtain benefits; and

f. Perform such other functions and take such other actions as may be required by the Plan or as may be necessary or advisable to accomplish the purposes of the Plan.

The Company shall furnish the Committee with all data and information available which the Committee may reasonably require in order to perform its functions hereunder. The Committee may rely without question upon any such data or information furnished by the Company.

8.3 _Agents_. The Committee may appoint a Secretary who may, but need not, be a member of the Committee, and may employ such agents for clerical and other services, and such counsel, accountants and other professional advisors as may be required for the purpose of administering the Plan. The Committee may rely on all tables, valuations, reports, certificates and opinions furnished by its agents.

8.4 _Procedures_. A majority of the Committee members shall constitute a quorum for the transaction of business. No action shall be taken except upon a majority vote of the Committee. An individual shall not vote or decide upon any matter relating solely to himself or vote in any case in which his individual right or claim to any benefit under the Plan is particularly involved. In any case in which a Committee member is so disqualified to act, and the remaining members cannot agree on an issue, the Company shall appoint a

5

temporary substitute member to exercise all of the powers of the disqualified member concerning the matter in which he is disqualified.

8.5    Plan Administrator.  The Committee shall serve as Plan Administrator for the Plan and shall:

a.    Communicate decisions, instructions and other information to Employees and/or beneficiaries;

b.    File and distribute all reports, disclosures, Plan registrations, Summary Plan Descriptions and other information required to be filed or distributed by law or by the terms of the Plan;

c.    Have such other duties as are imposed by the Plan; and

d.    Be the agent for service of legal process with respect to the Plan.

8.6    Claims Procedure.  In the event that any Employee or beneficiary claims to be entitled to benefits under the Plan and the Committee determines that such claim should be denied in whole or in part, the Committee shall, in writing, notify such claimant within ninety (90) days of receipt of such claim that his claim has been denied, setting forth the specific reasons for such denial.  Such notification shall be written in a manner reasonably expected to be understood by such Employee or beneficiary and shall set forth the pertinent sections of the Plan relied on, and where appropriate, an explanation of how the claimant can obtain review of such denial.

Within sixty (60) days after the mailing or delivery by the Committee of such notice, such claimant may request, by mailing or delivery of written notice to the Committee, a review and/or hearing by the Committee of the decision denying the claim.  If the claimant fails to request such a review and/or hearing within such sixty (60) day period, it shall be conclusively determined for all purposes of this Plan that the denial of such claim by the Committee is correct.  If such claimant requests a hearing within such sixty (60) day period, the Committee shall designate a time (which time shall not be less than seven (7) nor more than sixty (60) days from the date of such claimant's notice to the Committee) and a place for such hearing, and shall promptly notify such claimant of such time and place.  A claimant or his authorized representative shall be entitled to inspect all pertinent Plan documents and to submit issues and comments in writing.  If only a review is requested, the claimant shall have sixty (60) days after filing a request for review to submit additional written material in support of the claim.  After such review and/or hearing, the Committee shall promptly determine whether such denial of the claim was correct and shall notify such claimant in writing of its determination with sixty (60) days after such review and/or hearing or after receipt of any additional information submitted.  If such determination is favorable to the claimant, it shall be binding and conclusive.  If such determination is adverse to such claimant, it shall be binding and conclusive unless the claimant notifies the Committee

GT06/22/07SI1-0019

within ninety (90) days after the mailing or delivery to the claimant by the Committee of its determination that he intends to institute legal proceedings challenging the determination of the Committee, and actually institutes such legal proceedings within one hundred eighty (180) days after such mailing or delivery.

    8.7   <u>Indemnification</u>.  The Company shall indemnify each Committee member against any liability or loss sustained by reason of any act or failure to act made in good faith, including, but not limited to, those in reliance on certificates, reports, tables, opinions or other communications from any company or agents chosen by the Committee in good faith.  Such indemnification shall include attorneys' fees and other costs and expenses reasonably incurred in defense of any action brought by reason of any such act or failure to act.

    IN WITNESS WHEREOF, the Company has set its hand and seal this on the day and year first above written, and the Employee has executed the Adoption Agreement on the date set forth therein.

FLORIDA SMOKED FISH COMPANY

By: _____
      Harvey Oxenberg, President

7

GT06/22/07SI1-0020

## FIRST AMENDMENT TO THE
## FLORIDA SMOKED FISH COMPANY LIFE INSURANCE PLAN

THIS FIRST AMENDMENT, made this _9th_ day of _August_, 1999, by SEASPECIALTIES, INC., a Florida corporation formerly known as Florida Smoked Fish Company (the "Company") to the FLORIDA SMOKED FISH COMPANY LIFE INSURANCE PLAN (the "Plan").

### WITNESSETH:

WHEREAS, the Florida Smoked Fish Company did establish the Plan effective as of November 11, 1995;

WHEREAS, the Company reserved the right to amend said Plan;

NOW, THEREFORE, effective as of January 1, 1999, the Plan shall be amended as follows:

1.     The Plan is hereby revised by striking "Florida Smoked Fish Company" wherever it appears thereunder and inserting "SeaSpecialties, Inc." in its place.

2.     In all other respects, the Plan shall remain unchanged by this Amendment.

IN WITNESS WHEREOF, the Company has caused this instrument to be executed the day and year first above written.

SEASPECIALTIES, INC.

Dated: _7/28/99_                    By: _____

GT06/22/07SI1-0036

MIAMI/PRZESTRZELSKIK/1055987/menz031.DOC/6/29/99/10517.010800

GT06/22/07SI1-0037

EXHIBIT D

## ADOPTION AGREEMENT
## UNDER THE
## FLORIDA SMOKED FISH COMPANY
## LIFE INSURANCE PLAN

By executing this Adoption Agreement, the undersigned (the "Employee") hereby elects to become an Employee under Florida Smoked Fish Company Life Insurance Plan (the "Plan"), subject to all of the terms and conditions of the Plan, by adopting the Plan in full as if the Employee were a signatory to the Plan. The following information applies to the Employee's participation in the Plan.

1.  Employee Name:     Arnold Richman

2.  Employee's Address:     9829 Arbor Oaks Lane, #101
    Boca Raton, Florida   33428

3.  Insurer:     Security Life of Denver

4.  Initial Face Amount
    of Policy:     $218,166.00

5.  Policy Number:     1542702

Witnesses:

_Mark B Levenson_

_____

_____
Employee's Signature

10-23-95
_____
Date

Acknowledged and Accepted by the Employer:

Florida Smoked Fish Company

By: _____
Harvey Oxenberg, President

2

GT/06/22/07SI1-0253